## SHOUB *v.* PERKINS ET AL.

[71 South. 270.]

PUBLIC LANDS. *Swamp lands. Confirmation. Act. Effect.*

> The lands in question were claimed by the state as swamp and overflowed lands under the swamp land act of congress of September 28, 1850; under this act, these lands were selected by the state as swamp and overflowed lands in 1859, and were afterwards sold by the state to the remote vendors of appellees. After some twenty years the land was rejected as not being swamp land; in 1905 congress passed an act (Act Congress, March 3, 1905, chapter 1485, 33 Stat. 1258) known as the McLaurin Act, ratifying the state's sale of such lands and confirming the title thereto in purchasers as of the date of such sales as if the title of the United States had passed thereby, provided that no valid title under the public land laws should be affected thereby. In such case whatever title the United States had remaining in it at the passage of the confirming act vested in purchasers from the state, and appellees claiming under such purchasers had good title as against appellant, who in 1907 entered or purchased under the homestead laws.

APPEAL from the chancery court of Jackson county. HON. J. M. STEVENS, Chancellor.

Suit by Thomas H. Shoub against Leroy Perkins and others, with answer and cross-bills by defendant. Demurrer to cross-bill overruled and complainant appeals.

The facts are fully stated in the opinion of the court.

*Wood & Taylor,* for appellant.

*H. B. Everitt,* for appellees.

SYKES, J., delivered the opinion of the court.

Suit was filed in the chancery court of Jackson county by the appellant against the appellees, to establish his title to certain lands claimed to have been acquired by homestead entry under the acts of Congress, and to have

declared void the claim of title of defendant to these lands arising under chapter 1485, United States Statutes at Large of the Fifty-Eight Congress. Appellees answered, and made their answer a cross-bill, setting up their claim of title to said lands. Appellant then dismissed his original bill; but the cross-bill of appellees, by leave of court, was retained and an amended cross-bill was then filed, which presented to the court, in full, the titles of both appellant and appellees. A demurrer was interposed to the cross-bill by the appellant, which was overruled by the court; hence this appeal.

The material facts alleged in the cross-bill are as follows:

The lands in controversy were claimed by the state as swamp and overflowed lands, under the Swamp Land Act of Congress, of September 28, 1850. Under this act, these lands were selected by the state as swamp and overflowed lands in the year 1859, and were afterwards sold by the state to the remote vendors of the appellees. This list was also filed in the office of the secretary of the interior at Washington; but no action was taken by the government on same for more than twenty years, at which time the lands in controversy were rejected as not being swamp lands. The bill alleges that on a part of the land in controversy, one Maggie Davis had filed an entry under the United States homestead law, and as to the other part, one E. E. Gould appeared as an entry man of a homestead. Neither Gould nor Maggie Davis had ever resided upon the land, or made any improvements thereon, as required by the statutes of the United States. Further, that the entry of Gould at the time of the passage of the act of Congress of 1905 (known as the McLaurin Act) was barred by the limitation of seven years, and was afterward canceled because of such bar. Maggie Davis relinquished her entry, and the part she had entered was in December, 1905, after the passage of the McLaurin Act, entered at the land office by one Klatt, who, without complying with the laws, also relin-

quished. The appellant, Shoub, made his entry under the acts of Congress in 1907. The cross-bill alleges in effect that at the time of the passage of the act of Congress in 1905 in question, the attempted entries of Davis and Gould had failed because they had not complied with the acts of Congress relating thereto. The demurrer admits these facts.

By the act of Congress of 1850, known as the swamp or Overflowed Land Act, it was the purpose and intention of Congress to cede to the states therein mentioned certain swamp lands. The lands involved in this suit were properly identified and selected by the state; but the list of same was not approved by the federal government—in fact, these lands were rejected by the United States as swamp lands and stricken from said list. The act of 1905, known as the McLaurin Act, was passed for the purpose of validating the titles of all parties who had purchased these rejected lands from the state of Mississippi. Said act, in part, reads as follows:

" . . . And said sales [meaning sales by the state of Mississippi to parties] are hereby ratified and confirmed, and the titles to said lands are hereby validated and vested in the purchasers, respectively, thereof, as of the date of said sales in all respects as if title of the United States had passed by such sales: Provided, that no valid title or claim under the public land law of the United States heretofore acquired and now existing to any of said lands shall be affected by this act."

The remote vendors of appellee purchased these lands from the state of Mississippi in 1862. This act of Congress vested whatever title the United States had remaining in it at its passage in these purchasers, subject only to outstanding valid claims or valid titles.

The bill, on its face, shows that neither of the above-named parties had complied with the law relating to the entries of these lands, and that they could not have perfected their titles under these entries. This being true, they were not valid claims, and neither held valid titles

to this land. The appellant here does not claim title through a subsequent entry of these lands as belonging to the United States. The contention of appellant is that by the first entry of the parties above mentioned, the lands were segregated and separated from the public lands, consequently were not public lands at the time of the passage of the McLaurin Act, and for this reason the, act did not apply to them. The case at bar is different from the railroad grants discussed in the authorities cited by counsel for appellant. In this case, the state of Mississippi and her vendors claimed title to a considerable body of land under the Swamp Land Act, and by the McLaurin Act the government expressly recognized this claim; and by said act, the government intended to convey and did convey to the purchasers of the lands from the state whatever right or title remained in the government to these lands. This is expressly shown by the language used in the act and in the proviso above quoted.

If this were a suit between the United States government and the purchaser of the land from the state of Mississippi, the government would be clearly estopped to assert any such title, because of the passage of the above act. The appellant in this case, when he purchased the same, or entered it in 1907, certainly acquired no, better title to the land than was vested in the government at that time. We think the case of *United States* v. *Des Moines Valley R. Co.* (C. C. A. 8th Circuit) 84 Fed. 40, 28 C. C. A. 267, clearly states the law; in delivering the opinion of the court, Judge Thaver says:

"It seems obvious, therefore, that the United States by the act of March 3, 1871, voluntarily relinquished whatever right or title to the land in controversy it then had; that it did so with full knowledge of its rights; and that the sole purpose of that act was to cure an existing defect in the state's title, and to estop the United States from ever after taking advantage of such defect for its own benefit. It is argued, however, that by reason of the proviso contained in the act of March 3, 1871, the govern-

ment reserved to itself the right to challenge the title of the state of Iowa, and those claiming under it, to the particular tract of land now in controversy, because Fairchild entered the land as a homestead on October 3, 1866. We cannot assent to this proposition. We fully concur in the view of the learned trial judge that the proviso in question did not reserve any interest in the land, so far as the United States was concerned, but was simply intended to leave homestead, preemption, and swamp-land claimants unaffected by the government's relinquishment of its own rights. By the act in question Congress declared, in effect, that the United States would not thereafter, for its own benefit, question the title to the lands which had been erroneously certified to the state; that the state should hold the lands free from all claims on the part of the government, but subject to such legal rights, if any, as had at the time become vested in any homestead, pre-emption, or swamp-land claimant."

*Affirmed.*